FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND 2014 MAR -7 PM 12: 02

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

Tafadzwa Nhira

5314 Myers Orchard Way

Perry Hall, MD, 21128

(Full name and address of the plaintiff)

v.

**WMN14 CV 0676**

Civil Action No._____
(Leave blank.  To be filled in by Court.)

Thompson Hospitality,505 Huntmar park Drive, Suite

Viriginia,20170. Compass Group, 2400 Yorkmont Rc

Charlotte N.C 28217, Morgan State University, Bowi

State, Jenoure, Brown, Zaikouk, Mitchell, Burge, Kelly, Weidner, Zaghari

(Full name and address of the defendant(s))

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

1. Plaintiff is a resident of Tafadzwa Nhira                                                    .
   (Fill in county or city and state of residence)
2. Defendant(s) reside(s) or does business at the following location: Morgan State Universi

1700 East Cold spring Lane, Baltimore, MD 21251, Bowie State University Bowie, MD          .

3. This action is brought pursuant to (check all spaces that apply):

☑ Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et
seq.*, for employment discrimination on the basis of race, color, religion, sex, or
national origin.

☐ Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621,
*et seq.*, for employment discrimination on the basis of age.  My year of birth is:

_____.

☐      Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq.*, for employment discrimination on the basis of a disability by an employer which constitutes a program or activity receiving federal financial assistance.

☐      Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, for employment discrimination on the basis of disability.

4.      I am complaining about (check all that apply):

☐      Failure to hire me.  I was refused a job on the following date: _____

_____ .

☑      Termination of my employment.  I was terminated from my employment on the

following date: <u>December 6th, 2011</u> .

☐      Failure to promote me.  I was refused a promotion on the following date:

_____ .

☑      Other (explain what happened): <u>Violation of public trust a</u>

<u>Engagement in protected activity including violation of Sarbanes-Oxley</u> .

<u>Otherwise discrimination and as set forth in the statement of fact section</u> .

5.      The conduct of Defendant(s) was discriminatory because it was based on (check all that apply):

☑ race    ☑ color    ☑ religion    ☑ sex    ☐ age    ☑ national origin    ☐ disability

6.      The facts of my claim are: <u>are as set forth in the factual complaint attached.</u>

_____

_____

_____

_____

_____

_____
_____
_____
_____
_____

7.    The approximate number of people employed by Defendant is: over 500 people

8.    The events I am complaining about took place on the following dates or time period:

as set forth in the statement of facts.

9.    I filed charges on the following date: September 20th of 2011 _____ with:

☑    Equal Employment Opportunity Commission (EEOC)

☐    Maryland Human Relations Commission

☐    Other (give name of agency and location):_____

_____.

10.   I received a right to sue letter (attach copy) on the following date: December 10th of 2

_____.

WHEREFORE, Plaintiff asks the Court to grant such relief as may be appropriate,

including but not limited to (check all that apply):

☑    Injunctive relief (specify what you want the Court to order):_____

      As set forth the prayer for relief section _____

_____

☑    Back pay.

☐    Reinstatement to my former position.

☑     Monetary damages in the amount of: as set forth in the relief section .

☑     Costs and attorneys fees.

☑     Other (specify): as set fort in the prayer for relief section

March 7, 2014
(Date)

_(Signature)_

Tafadzwa Nhira
5314 Myers Orchard Way
Perry Hall, MD 21128
443-653-1541

(Printed name, address and phone number of
Plaintiff)

## 1. Introduction

This lawsuit is about discrimination, retaliation, engagement in protected activities, violation of covenant of fair dealing, otherwise discrimination, and disparity treatment by my employer and its strategic partners. I am a 45 year old black male of Zimbabwean national origin and of Christian faith. I should win because the employer, during the employment period, and the investigative phase lied and falsified information and financial records which I opposed because it is unlawful and illegal. Furthermore, due to association with Tajun JarAllah's internal case and unlawful employment practice occurring at Bowie State University, which I opposed, I am entitled to relief. At the time of discharge, I had been meeting my employer's job performance expectation, although consequently suffered an adverse action of employment.

Why should I win?

In any discrimination and/or retaliation case of employment, The Supreme Court of the United States of America and other Appellate Circuit courts, have established that if an employer lies, it is evidence of discrimination or retaliation. Please see *(Reeves vs. Sanderson Plumbing Products, Inc., 120 S. Ct.2097 (2000) )*. Also, please see the case of *Upshaw v Ford Motor Company* in Michigan. Furthermore, timing of the event of termination is critical. The closer the timing to mitigating factors, the more plausible discrimination has actually occurred including retaliation because of engagement in protected activity. Consistency is important and in this case the reason advanced for my severe adverse employment action is not consistent. Jill Brown stated to me on the day of

discharge my actions were considered fraud and I was accounting for inventory inappropriately. However, when she found out I was denied the opportunity to and submit reviewed and accurate inventory she informed me that it does not matter I was being held accountable. The counseling form also stated an audit was conducted and it was confirmed. Subsequently and during the investigation phase it changed to a review. This is also evidence of scampering for concealing the real reason for discrimination and retaliation.

### 2. Todd Burge is not a qualified independent auditor

Deformities within the inventory which Burge did not know about and I had to inform him including showing him the missing product on the inventory sheets. He was not familiar with the inventory itself and I want him under oath to answer questions relevant to the inventory and other issues.

### 3.  What I am seeking?

I am seeking monetary damages, compensatory damages, punitive damages, pay all court fees associated with this case, the equivalent of attorney fees since I am a pro se litigant and it takes time to research and read the law and apply relevant information pertinent to this case. I have to drive to the court and ask the honorable judge to determine justice. I am also asking the court to issue an injunctive order to Thompson and Compass Group to stop making aggressive budgets such as 16.60% or 19.90% in some periods causing pain to students and parents have to come up with money to support their children whom they have sent to Morgan State Rawlings dining Hall as residents although they have paid for

board on their bill. I opposed this budgetary practice and was told that it was out of my scope of decision making. In addition I am also asking the court to issue an injunctive order to Thompson and Compass group and their strategic partners and alliances that they stop preferential treatment of Moroccans and give preferential treatment while preventing other nationalities like Nigeria and Zimbabwe to effectively do their job as well as deny them the opportunity of due process of law. Due process of law is for everybody including foreigners whom you might or do not like. I was denied due process.

### 4. Statement of Facts

I was hired by Thompson as Food Service Director with a starting salary of $65,000.00 per year and by the time of adverse event of termination it had reached $75,691.20 per year because I was consistently evaluated excellently every year because of meeting and exceeding my job performance. My job duties were as is specified in Exhibit 1. Thompson was having challenges with Morgan State University contract. After a brief stay at Savannah State, I was forced to go to Morgan State University under unusual circumstances at Savannah.

The program was a disaster. Students were complaining about the program and Thompson. In short Thompson was an undesirable brand at that time. I was entrusted to do several things:

i). Turn around the program to a desirable one

ii). Stop the spiraling down the hill of the finances for Thompson at this particular account.

No one wanted to come as a food service director at this account. The evidence will show Thompson advertised in various outlets to find a suitable candidate in vain. After demonstrating they could not get anyone I was hire permanently to straighten the account. Prior to my coming, Thompson had more than 5 food service directors including resident district manager to assist with the operation within 5 years. Within a few months we accomplished a good brand part, and by 2008 we managed to be in the black financially.

### 5.   Under Tafadzwa Nhira's leadership

During my tenure of more than 5 years, it was only one food service director with no resident district manager but just supporting associates and managers. Through responsible hard work, I managed to lead the team to a wonderful accomplishment and in 2008 we were awarded outstanding achievement by the company. The program was now desirable and we had managed to make several hundreds of thousands of dollars in profit. It was done by consistently listening to the genuine needs of students and making relevant adjustments as needed by the student body. The trust bestowed upon us by these students was sacred and we had to work hard and responsibly.

Vice president Abraham Moore wrote a letter to Mr. Warren Thompson, specifically stating that his director, meaning me had managed to stabilize the turnover rate of staff which was a good thing. He also indicated that Morgan used to receive unsolicited feedback of how caring and passionate the food service director was about sanitation and many other things pertaining to the program. He was appreciative of my efforts as well as other staff.

### 6.  Performance ratings

My ratings was described by the company as excellent consistently. Even the last

evaluation in the year 2011, it was good evaluation earning me a merit raise as well.

Vinetta Paige-McCullough. The client, always told me that I was doing an excellent job.

In one of the Christmas gifts she gave me she wrote: " Today. Mr. Tafadzwa Thanks for

the difference you make! Continue to your utmost for "His Highest." To God be the

glory!" then she signed it. As much recent as September 22nd, 2011, please see exhibit

11, she sent me an e-mail stating that she was hearing good things about our program.

She informed me to join her to the town hall meeting as was required by all Morgan

department heads to attend during this town hall meeting to address student concerns.

During the student town hall meeting, a student mentioned to the president that Mr.

Tafadzwa does an excellent job and he cares so much for students. The president was

interrupted by a round of applause by the student body attending such a town hall

meeting. Later on he thanked the student as he was mentioning some issues that were

non-food related and had nothing to do with our program but pertaining to the University.

Traditionally, in town hall meetings complains always come up about food service. In

other town hall meeting I once attended earlier in the year, the Vice President of Finance,

Mr. Raymond Vollmer came to me after the meeting and expressly thanked me for a

good job I always consistently do. He stated to me it is evident you are always prepared

in your department because no issues were brought forth concerning food services.

### 7.  Warren Thompson (president and of Thompson Hospitality) viewed me as an

### asset (exhibit

Please refer to exhibit 2. Upon reaching five years anniversary with Thompson, he sent

that letter signed by him. Let me quote specifically what stands out of this letter:


"I wanted to take a few minutes to share with you the pride that associates like

yourself

bring to all of us through your hard work, positive attitude and dedication. You are a

prime

example of the loyalty and commitment that makes us great.


Your years of service are a true testimony of the caliber of professional you are. We

are

proud that you have chosen to grow in your career as part of our family".

This opinion and personal rating through a letter is even validated as late as December

2nd, 2011. Thompson and I talked at the company holiday party. He stated to me that our

numbers looked good and were finishing the year strong. He also stated that he was

looking to yet another strong year, meaning upcoming 2012. However, as an after-

thought, Thompson said, "Tafadzwa be careful".

During my years of employment at Morgan, as I carried out my duties, I worked hard and

responsibly. My performance was outstanding. The evidence will show I did my work

well and consistently. The evidence will also show that I made an effort to ensure that the

numbers we were sending to the accounting department were fairly valuated.

Furthermore, the evidence will show I was denied the opportunity to submit

reviewedinventory and correct all my unit numbers as was the normal standard

procedure. I was also denied the opportunity to correct our numbers submitted to the bookkeeper which were false. Everybody in Dina's district was given the opportunity to review and correct their numbers except me. Please see exhibit 3 of the inventory taken by chef Michael Amos and an hourly associate which was input in the system by Roy Wilkins and forwarded to me for review after we uncovered significant product that was not put on the inventory sheets but were in-house. It consists of the e-mail generated by Roy Wilkins at Friday, December 02, 2011 at 5:22 pm, the food categories, and the attachments. I left for Virginia that Friday in hopes of correctly reviewing and correcting the numbers on Monday. Dairy product raised a flag because it was only $230.69 according to the categories submitted by Wilkins to me to review. Liquid eggs are classified as dairy product by Thompson as well. This was misleading and false but Burge and Mitchell went with these inventory numbers to further perpetrate their hidden motive of discharging me. There is absolutely no way this food would have served a potential of over 2,200 students on the meal plan for Friday dinner, Saturday Brunch, Saturday dinner, Sunday brunch, Sunday dinner, Monday breakfast, Monday lunch, Monday dinner because we had to prepare the ingredients for Monday on Sunday. Dairy alone would have been finished by the end of lunch on Friday. Mitchell refused to input the correct inventory in the system. "She stated you are trying to give me an inventory with well over $15,000.00 than what was submitted already, this was on Monday December 5th of 2011". I was shocked. How can they be putting false inventory in the system? This was part of the set-up to get rid of me under a pretext to cover their true intention of dismissing me. That is why they did not follow the standard procedure of

reporting inventory and deny me the opportunity like every food service director on Monday December the 5th of 2011 in preparation of numbers coming out the next day.

### 8. Former Chairmen of the Regents (Dallas Evans)

On December 2, 2011 in Virginia at night, former Board of Regents chairman Dallas Evans, thanked me at the Thompson Holiday party. He told me that we always do a good job taking of the students. He said he was very proud of me and keep up the good work.

### 9. No disciplinary action on file in this year

During my years of employment with Thompson and its strategic partners, I did not have anything on file as bestas I can recall, indicating I had performance issues. As late as August 26th of 2011, I received a bonus for excellent performance. Please also various cancelled checks with bonus on them indicating I was an excellent worker.

### 10. Excellent performance given by the athletics department

Morgan entered me in the hall of excellence during the fall of 2011. I was personally given a plaque for outstanding performance. Please see exhibit 4 and 5 as well of validating my commitment to the program and unwavering commitment to Compass Group, Thompson and their partners.

### 11. Dana Mitchell

I had several issues with Mitchell. In the summer of 2011, she had allowed a summer group to eat for free. When I confronted the group leader, he informed me that my boss had allowed them to come and said it was okay to eat and they could sit in the back. I explained to him that she was not my boss and they had to leave. Upon confronting Dana, she became belligerent and started shouting loudly. We went into her office and she

screamed at me and said, "I hate you". She said she will call Dina Zaikouk and reported

me. After she realized that I meant business she said, "I will call the police on you". I

explained to Dana that we were running a business and she needs to follow instructions. I

also told her that she must avoid being emotional and sensitive. The relationship between

her and me became strained. She made allies with Cheryl Nicholson, quality control

manager of Morgan State. Nicholson would come in the dining hall and enter into

Mitchell's office and they would shut the door and speak for some considerable time.

## 12. Unusual Meetings in the Fall of 2011

Cheryl Nicholson called for several meetings in the fall. She dictated that all managers

must be present at the meeting. I tried to explain to her that they do not have to be present

since they need to take care of students but she stated to me that everyone must be there

or there will be consequences from McCullough and Maurice Jenoure. In one of the

meetings during this fall, Nicholson stated that managing dining services and physical

plant was like managing daycare. She then further stated that the only thing going for us

was catering managed by Roger Avery, who was catering director at that time. Avery

became my replacement and is an African American of US national origin.  I was really

surprised by her statement. Some managers were upset, Roy Wilkins expressed anger at

this statement. However, in a few subsequent weeks, Nicholson was stunned by a round

of applause given to me by students during David Wilson's town hall meeting.

Unfortunately for her, Roger was not mentioned. The evidence will show in various form

the bias against me that was exhibited by Nicholson particularly this fall. What is unusual

is that when the program was struggling there was no animosity. However, after

successfully leading the program to such unprecedented level of satisfaction, it became so

difficult in terms of working in amicable terms. My work came under ferocious scrutiny

through e-mails, inspections and many other things. It prompted Norman Glenn, the in-

house sanitarian to inform me that he feels that I was being picked on.  This statement did

not surprise me. My immediate supervisor, Dina Zaikouk, had told me that they were

tired of receiving letters from Morgan about Roger Avery being the star of the account

and being the reason why the account was why what it was.I opposed such

characterization because it was divisive and focusing on preferential treatment than

taking care of students issues.

### 13. Association with Tajun JarAllah

The situation got worse as I got associated with Tajun JarAllah discrimination and retaliatory

internal case, who had been hired to work at Bowie State University. He uncovered some

financial irregularities and inventory reported by his boss Mark Zaghari. One time he came to

Morgan State wanting some food for their account, and he started sharing with me some

concerns he had uncovered. Specifically, Mark was manipulating his inventory numbers and

reporting false inventory. It took a serious turn when he mounted a full press court and alleging

that Zaghari was adding product that was not there. We spoke on the phone thereafter and met a

number of times. I advised him to take it further to Jenoure and Thompson so it could be

resolved fairly. It did not turn out the way I thought it would, I was the one who was fired in

retaliation. They made up trumped charges which were nothing but a pretext in quest of getting

rid of me while Zaghari goes scot-free. In addition Zaghari was taking company vehicle

transporting food to his home and using company vehicle for personal use. Please see exhibit 6 and 7.

### 14. Here is the time line of the sequence of events.

The evidence will show that Zaikouk was called by JarAllah about the inventory issue and did not respond. Furthermore, the evidence shows that Zaikouk was e-mailed by JarAllah to discuss the issue of reporting false inventory by Zaghari on or about September 15, 2011 and she responded by saying e-mail stating that she will call to discuss but it never happened. JarAllah went to the vice president Jill Brown. According to JarAllah, Brown was not interested in solving the issue. Instead she was covering for Zaghari. One of Brown's staff members had a close relationship with Zaghari. Mrs Brown expressed special interest in the case. Rather than fairly and objectively address the issues brought forth, she went into reasoning mode. Please exhibit 6 and 7 as written by JarAllah.

### 15. After unsuccessful attempt through Brown

JarAllah with consultation with me took it further to Jenoure. I told him to do so. It did not produce any effect

### 16. After unsuccessful attempt through Jenoure

Finally he went to Thompson, subsequent to my discharge with his complaints and ultimately to the EEOC. Please see exhibits 6 and 7 again.

Morgan State University does not have Pizza Hut as a brand. After Dana Mitchell generated a report in period period 12 which was from 10/31/2011 through 11/27/2011, I asked her why the indirect expense royalties-pizza hut of $1,923.08. She said she had no idea.

I complained to my boss about our financial statements. Specifically I told her we do not have Pizza Hut as brand. Additionally, we should not be charged the $1983.00. This was one of the accounts I complained about. On one of the conference calls, Zaikouk informed everybody that she was working on our numbers to be corrected if there were errors. Then she asked if there was anybody with a question. I asked her on the conference call that our numbers were not corrected still after I had complained. Zaikouk told me to talk to Collen Gore, chief financial controller. Later on she said or Lilian Hu. I called Lilian Hu, and Hu told me to talk to Zaikouk and Jenoure since they are the ones who approve and or make adjustments to budgets. This led me to believe these executives were manipulating corporate financial statement numbers. A simple question of making sure our numbers are not misleading was not answered. Furthermore, cumulatively this impacts stockholders of Compass Group in violation of Sarbanes Oxley. This occurred around October and part of early November 2011.

### 16. The fateful day, December 6th 2011

Although the company gave two different dates in an effort to cover up their real motive of discrimination, the real date of discharge was December 6th, 2011. The other date as explained by them in exhibit 8 is a false date, because their story does not add up. Part of their explanation is further prima facie evidence that I should not have been dismissed.

### 17. Denied due process

Constitutionally I am entitled to due process but I was denied by Thompson and its strategic partners.

### 18. False inventory submitted to Corporate by Mitchell and Burge

Both units left inventory as evidenced by Chef Amos admitting in front of Burge and Wilkins that he forgot and wanted to do a compromise of just writing 23,000.00 for unit 64.

### 19. Intentional disregard for true numbers by Burge, Brown and Zaikouk

Please see exhibit 3 with inventory for unit 64. That inventory is false. Todd Burge knew it. I also told Burge, by virtue of entering false inventory in the system, they have violated the law. Specifically, I told him that you are underreporting profit for the week and it is likely to affect the weekly operating report and ultimately monthly and year-end numbers. The evidence will show the inventory for unit 64 taken by Chef Michael Amos and an hourly associate severely understated. Amos admitted he forgot a lot of product and he wanted us to just reach a compromise and write $23,000.00 dollars. This was in front of Wilkins and Burge. I told him that we count everything that they had left and reasonably estimate what we could identify in the menu based on production sheets. Burge did not agree to do that because it would have exonerated me and their motive would have failed. Ultimately I was discharged under false and untrue reasons. There was never any $40,000.00 dollar usage over the budget as Brown claimed. Up to now, they never told me how they arrived at $40,000.00 usage over the budget. Even if they try, they are not going to find this $40,000.00 because it was a phantom number they made up. The evidence will obviously show it was not true at all.

### 20. Honorable Judge

If they still make arguments over their claim, if it pleases the court, allow me to observe under a different supervision, that they order the food they put on inventory and then try feeding a potential of over 2200 students on the meal plan for Friday dinner, Saturday Brunch and Dinner, Sunday and Monday all the way through dinner because we had experienced late trucks and we were there. To avoid confusion, they order pound for pound of the same food they put on the inventory submitted by Roy Wilkins and Amos. I have attached the inventory so you can see. The evidence is readily available.

**Thompson Hospitality was paid full board rates for services rendered for all those week (There was food to render services)**

The accusation was that I was adding product that was not there? This was according to Burge and Mitchell as well as Brown and Zaikouk.  The evidence will show that Morgan paid Thompson Hospitality and Compass Group for all those weeks in question. They received full billing as the contract specifies. However, the mantra and thematic tones were that there was not enough food.

**21. Dan Kelly, Zaghari's friend**

I learned that JarAllah was going to be transferred from Bowie to another location from Dan Kelly. Dan Kelly was surprised that I was in opposition to the idea. First, I knew it was illegal and unlawful employment practice because JarAllah had made a tremendous difference at Bowie. It was illogical to suddenly remove him. Before, my chefs were taken to Bowie to help because Zagahri had no clue how to handle the account. Unlike me, in difficult times, I relied on our staff to help and treated them fairly. When confronted with the issue of food preparation and kitchen matters, Zaikouk came and took some of my chefs to go and help. My opposition was

strictly because it was unlawful to just take somebody and plant him or her somewhere without taking into consideration of other factors. However, when it came to me, I had no help. At one time I had to work 18 hours a day and run multiple units with very few managers. During the summer of 2011, the managers were fatigued. That is when they hired Amos and Alessandra McGwire. Secondly, the company cannot just take people for granted like that. Kelly quickly changed the subject and asked me to go see chef Michael Amos because he wanted to talk to him about something and he had not seen him since he last hired him. I went but sensed that the topic of Zaghari and JarAllah was a hot topic. Interesting enough, Amos was used to take inventory that contributed to my discharge.

## 22. Burge was not familiar with inventory at Morgan at all

Burge did not know there was inventory in the former catering office. Neither did he know that a lot product was not included. He was stunned after the damage was done and consequently the decision was made to get rid of me. I even showed him specifically a lot of product that was left out including cheese and beverages which I pointed out the discrepancy. From a vantage point and in talking to Burge, he was not interested in the truth. This meant even fabricating non-existent evidence and in cahoots with Mitchell, my bookkeeper who had shouted at me stating that she hated me in the summer.

## 23. Bias

Jill Brown, had initiated settled grievances on or about October or September, 2011 that were settled. The union vice president Crystal responded stating that she did not know there were grievances pending because she was out of town. Jenoure asked Brown what had caused the grievances to occur. This time around in response she did not copy me on it. Well, two of the

grievances were against me. However, they had been settled. Mrs. Alvera Johnson refused to lie because she stated that Mr. Tafadzwa never did anything wrong to her. As far as Dina Skinner is concerned, the issue of punching in earlier than usual was continuing and I was trying to correct it. Secondly, the issue of falsification of seniority was brought out by other employees and I was trying to get it addressed. Please see exhibit 9. Her seniority dates are not true based of the resignation letter marked exhibit 9. The same for Keith Wilkerson, he claims he has been there for over twenty seven years, which means he must have started working while he was about 13 years old or so. Brown was biased against me. She did not address these issues nor showed willingness to.

## 24. Zaikouk

Zaikouk expressed bias in handling issues of inventory. All food service directors were given opportunities to turn reviewed and corrected inventory but me. Furthermore, no disciplinary action was exacted on Zaghari when allegations of inventory were made against him.

## 25. Disparate treatment

It took me a week to get adversely affected concerning allegations of inventory. Whereas it took Zaghari's case more than a year from the time of allegation up to partial settlement and still JarAllah is not happy because of perpetrated fraud. Zagahri is associated with Zaikouk by way of origin. He used to boast to me that Zaikouk will not touch him because they are from the same country and Jenoure and Zaikouk do not bother him. This is discrimination based on national origin and also disparity treatment.

## 26. Color of skin preferential treatment

Dris Jariff had inventory issues like me, but he was not dismissed. Driss is from Morocco like Zikouk and Zaghari. Instead, their auditor told him to go and fix the problems in the inventory. Zaghari had inventory issues but was never dismissed. I was not extended the same treatment as these Moroccans. They are originally from Morocco, that is Northen part of Africa. My location is of originality is southern Africa, Zimbabwe specifically.

### 27. Conference call Statement by Dina

During the fall, sometime in either September or October of 2011, I can verify the dates by pulling these recorded conference calls, Zaikouk told Zaghari while others were listening that his inventory numbers keep changing. She asked whether these were true but Zaghari did not answer. Again, this is prima facie evidence of discrimination. It is caught on taped conference call. Zaghari was not dismissed.

### 28. Zaghari never got dismissed for inventory changes and varied financial statements

I used to do conference calls for Zaikouk. I used to e-mail the reported numbers by food service directors to Zaikouk. They took the laptop but I am requesting all e-maill sent as attachments and regularly e-mailed, which showed the company the differences of food cost and inventory reported. This is evidence to show discrimination and disparity of treatment against me.

### 29. Zaghari's strange phone call

Sometime in October of 2011, Zaghari called me on company cell phone. He asked me wheteher I was by myself to which I said yes. We talked quite a bit. Then he suddenly said, "To be honest with you Tafadzwa, I make up my own numbers and I do not care". I told Zaghari that it was illegal to falsify inventory. I also told him that you make an effort to reasonably try to make sure

it is accurate, Zaghari stated to me he does not care and there is nothing Zaikouk and Jenoure would do to him. Furthermore, Burge does not know anything. I was surprised. However, despite all such statements, Zaghari is still with the company.

### 30. Public trust and food safety violation at Bowie

Public trust is sacred. We have to protect it. According to JarAllah, one of the chefs he supervised did spit in the food preparation area several times. A write-up was prepared but Zagahri did not want to address the issue. I have a duty to fight for Bowie University students even if Zaikouk or Jenoure do not see it that way. I have a duty to respect public policy of Maryland, therefore I took exception to this practice. I opposed it. Spitting in food preparation sinks is against health regulation and should not occur. It does not matter who you are but you cannot endanger people's lives with possible contamination. Again, no disciplinary action was carried out as if Zagahri is a protected species. The federal government tells us to report wrong doing and illegal activities. What is the purpose of the government telling us to report wrong doing and when we do we get victimized and our livelihood is deprived because we conformed as I did with reasonable belief my employer was engaged in illegal . Even under the color of Maryland law, we must be protected. A chef or anybody should not spit in a food preparation area. Thompson and Compass Group and Bowie State did not support JarAllah. Instead they wanted him out which they succeeded. It was skirted aside.

### 31. Zaikouk and lying about Union Benefits

In October, Zaikouk wanted me to lie about union benefits. I refused. I had told the union that pay raise were not issued for now. This was what Brown had stated to me in e-mail. Zaikouk

called me and she was fuming. During collective bargaining agreement I was instructed not to talk. They wanted me to talk only if I was prompted. Part of this was fear that I will tell the truth because I had opposed giving misleading information to the union. It means we were not negotiating in good faith. She was extremely upset. She also told me that one of these days I shall be fired because I do not listen. I informed Zaikouk that what I told the union is the truth. She got upset.

### 32. Timing is everything

I complained about and opposed many issues to my supervisor and vice president of human resources that were not resolved. Everything was fine up until I got associated with JarAllah and complained about some possible falsifying on non-existent accounts as well as opposing negotiating in bad faith. I also complained about the issue of bonus throughout the fall. Zaikouk made a comment at the back dock of Rawlings dining hall that if I keep raising the bonus issue, one of the days I shall be fired. I responded to Zaikouk that it is misleading to state in the financial statements we received so much amount of bonus when we only received a smaller amount. The chart of accounts has its own accounts and they should resemble a true and not false picture of what has actually happened. I told her that as much as you claim that we are losing money is as much as we are making money because as a food service director the evidence shows you never gave me that much of a bonus you claim as an expense on the income statement. The net effect cumulatively is defrauding investors of potential growth in securities they have invested in. Zaikouk got so upset thereafter. Her face was red. Although I was supposed to receive 40% of 1% of total sales, and then it was slightly revised later, I never got anywhere near that amount. This means the proper way to account for was to go the route of

contingency. She was visibly upset. She warned me that if I keep bringing these bonus issue she will not protect me. My opposition to this protected activity got on her nerves. However, she was afraid because she knew that I knew what I was talking about and told me that I knew more than her. I do not know what made her talk like that. Usually she is aloof and extremely guarded in what she says.

### 33. I expressed interest in the district manager position

The district manager position was going to be open and I expressed interest in it. I told Kelly when he was at the Morgan career fair during the fall of 2011 in October. Additionally, I informed my boss that I was interested in the job. She responded by saying if you want to lose your religion go ahead and apply, because you will be fired down the road. On a separate incident of religion, a Jewish football punter student was denied meal privileges. I tried to accommodate him, instead Zaikouk wanted him to go off the meal plan. She wanted me to tell Nicholson to see if she can work out something in terms of removing him from the meal plan. I opposed that course of action and then she stated that she will take care of it. Please see exhibit 10. Later on Nicholson asked me whether the name Abraham Mercato rings a bell. When Nicholson realized that I opposed the course of action being taken by her and Zaikouk, she did not proceed with the topic. The next thing Abraham was off the meal plan..

### 34. African American food service director for and Historically Black College and University

Morgan State wanted an African American food service director and Thompson agreed by terminating me. That is why they denied me the opportunity to submit corrected inventory reflecting proper valuation to include all missed product.

## 35. Statistics

All the managers who were under my leadership are all gone except Mitchell the bookkeeper, and Monica Brockman who used to be my assistant who is now Roger Avery's assistant. That is about only 1 out of 9 managers who were focused on operational aspect and were salaried. Only Roger Avery is still around. He is not perfect. Neither is it coincidence that he is still there. Morgan State wanted an African American of US national origin. This means he would not be fired or let go because that is the candidate they wanted. Thompson agreed. That is why they denied me the opportunity to submit correct inventory to fulfill their hidden agenda. Even if McCullough sent me an e-mail stating that I was doing a good job, please see exhibit 11.

## 36.Transfer of JarAllah

JarAllah transferred to an account which they knew they were going to lose. When JarAllah told me that they were transferring him to this location I told him that this was a move to get rid of him because Thompson was having issues of money payments with this university. My words came true as Thompson lost the account. At Bowie, according to JarAllah, the client did not consider him black. When they said black, they meant of African American descent. JarAllah is from Nigeria.

## 37. Conclusion

The dismissal was a pretext. Many inconsistencies exist. Furthermore, the company and its strategic partners are lying to cover for the adverse action they carried out on me. Please exhibits 8 T.here was no fraud of any kind. Instead, they manipulated numbers to come up with a benign reason. It is false to say I was no longer at Morgan State during the week ending 12/04/2011. The evidence will show I was still there. I was dismissed on December 6th, 2011. It is false to say, Nichole Rutledge, a female director, was food service director at Shaw University. The evidence will show she was food service director at Elizabeth City University before being transferred to Florida while the investigation was underway. It is false to say Nadar Modat is from Asia, while she specifically told me she is from Morocco just like Zaikouk, Zaghari, Jariff, Claudette are from Morroco. It is false to say inventory for both units were over-reported yet Burge and Mitchell entered false inventory in the system. Please see exhibit 3 causing the profits for the week to be materially understated and actually possible resulting in a loss causing to avoid paying income taxes to the State of Maryland and the Federal Government. It is illegal and defrauding Compass group investors' potential price increase in the stock price. It violates Sarbanes-Oxley and I opposed that fraudulent behavior causing me to be engaged in protected activity. It is illegal and unlawful to dismiss someone under a pretext. It violates title VII of 1964. The dismissal was a sham, a pretext, couched in benign reasoning of inventory and deceit. The story does not add up, hence lying and use of information because, Jenoure, Zaikouk, Brown, Burge, Kelly and even Mitchell and Zaghari have exclusive control of information that can be presented. This also includes Morgan State and Bowie State. Despite the fact that on June 8, Raymond Vollmer wrote a letter giving Thompson a board raise and even pointed out we had a positive relationship. Please see exhibit 12 as evidence.

**38. Causes of action**

1st Cause of action

I, Tafadzwa Nhira, hereby repeats and allege each and every fact and allegation as set forth in the factual section. After I got involved in protected activity, a plot was devised to get rid of me. I opposed what was happening at Bowie and directed towards JarAllah. I opposed unlawful employment practice at Bowie and Zaikouk and Zaghari, both from Morocco targeted me and Thompson did not stop it.

2nd Cause of action

I, Tafadzwa Nhira, hereby allege have been treated differently, than similarly situated persons of different nationality and/or origin, sex, race and color of skin. I was not given the opportunity to turn correctly reviewed numbers as everybody else in the company.

3rd Causes of action

I, Tafadzwa Nhira, hereby allege and repeat as stated in the fact section preferential treatment to Moroccans as evidenced by the promotion that happened to district manager of Zaghari, the same position Zaghari, Zaikouk, and Kelly knew I was interested in as well as Nadar Modar's promotion to PGCC as alleged by JarAllah..

4th Causes of action

I, Tafadzwa Nhira, allege and repeat Morgan State's preference of an African American to be their director even though he did not meet the minimum qualifications for the position of food service director as my terms of employment and job description stipulate.

5th Cause of action, denial of due process in violation of constitutional rights and Title VII, in furtherance of their real motive of discrimination and retaliation.

6th Cause of action

I, Tafadzwa Nhira, allege discrimination based on sex, as women have been given an opportunity to correct, revise, adjust inventory.

7th Cause of action

I, Tafadzwa Nhira allege as set forth in the fact section, discrimination based on religion, which contributed to my dismissal as evidenced by Zaikouk' statements and the letter marked exhibit 10.

8th Cause of action

I, Tafadzwa Nhira, allege and repeat covenant of fair dealing. After dedicated years of self-less service, there had developed a good faith relationship between Thompson, Compass group and all their strategic partners to treat me fairly and at least give me opportunity to explain myself in unclear situations as opposed to just saying an audit was conducted yesterday and it was confirmed therefore today you are terminated.

9th Cause of Action

I Tafadzwa Nhira, allege parents and students of Morgan State gave Thompson and Compass Group and Morgan an opportunity to do well, therefore budgets should be reasonable specifically for Rawlings Dining hall where students are forced to eat in the dining hall

10th Cause of action

I, Tafadzwa Nhira, allege violation of public trust by both Bowie University and Thompson when Zaghari dissuaded JarAllah from disciplining the chef who did spit in the prep sink. In addition Zaghari stick his fingers in meatballs defiantly of health regulation and he is not disciplined because he has a strong relationship with Zaikouk and who is from Morocco like her, and also Kelly, Brown, and Jenoure do not do anything about it. Whereas anything pertaining to me they all converge and descend on me within a day or two.

11th cause of action

I, Tafadzwa Nhira, hereby repeats otherwise discrimination in violation of Title VII of 1964 at Morgan State, having been given to do all the dirty week in the foodservice department and then fired after cleaning the mess.

Prayer for Relief

Wherefore, I, Tafadzwa Nhira, prays that the court enters judgment in his favor and against all defendants, and containing the relief described below after jury deliberations:

A.  A declaratory judgment prohibiting, the conduct, actions and practices of defendants as complained in the statement of fact section which violate US laws and Maryland State public policy laws.

B.  An injunction ordering permanently all defendants to restrain from such unlawful conduct

C.  An order to restore whole Tafadzwa Nhira financially bearing in mind the whole issue affected his life significantly putting Tafadzwa in the position he would have been but for Thompson and Compass Group. Morgan State, Bowie State, discriminatory and

retaliatory practice. Additionally directing the defendants to desist from such malicious, egregious, callous and cruel practices.

D.  Award damages to be determined at trial in addition to costs normally incurred by attorneys, all court costs incurred.

E.  Award of damages that can be determined at trial suffered by Tafadzwa Nhira plus prejudgment interest.

F.  Damages as an award to compensate Tafadzwa Nhira for non-monetary and compensatory harm, including mental anguish, embarrassment, stress as well as anxiety, resultant pain and suffering, and also distress.

G.  An award of defamation of character as a result of this vicious, spiteful, hateful and malicious act.

H.  Order defendants to remove the disciplinary form from my file

I.  An award in the form of punitive damages to cause an innocent bystander not to engage in such a cold, callous, heartless, egregious, selfish driven motive, particularly when Iyou have been given dedicated service where as an example, I have zero call out, no use of sick time throughout the employment phase as best as I can recall, gave a bulk of my yearly vacation time to the company because we did not have enough help.

Submitted this 5th day of March 2014.

Respectfully and sincerely,

Tafadzwa Nhira

Plaintiff, Pro Se

Tafadzwanhira@hotmail.com

Tafadzwa Nhira

5314 Myers orchard Way, Perry hall, MD 21128.