IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TAFADZWA NHIRA                        *
                                      *
v.                                    *    Civil Action No. WMN-14-676
                                      *
THOMPSON HOSPITALITY <u>et al.</u>         *
                                      *

  *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**<u>MEMORANDUM</u>**

On March 14, 2016, Defendants Thompson Hospitality, Compass Group, Maurice Jenoure, Jill Brown, Dina Zaikouk, Dana Mitchell, Dan Kelly, and Abdelmajid Zaghari filed a Motion for Summary Judgment.  ECF No. 102.  That motion is ripe.  Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary.  Local Rule 105.6.  For the reasons set forth below, the Court will grant Defendants' Motion for Summary Judgment.

**I. FACTUAL AND PROCEDURAL BACKGROUND[1]**

Thompson Hospitality[2] provides food services to various colleges and universities through the operation of on-campus cafeteria-style dining halls, food courts, retail stores, catering services, and concessions.  In July of 2004, Plaintiff

---

[1] Due to the factually incomplete and often incoherent nature of Plaintiff's submissions, the Court has relied heavily on evidence presented by Defendants in assembling the background section of this Memorandum.

[2] Defendant Thompson Hospitality is a joint venture between Thompson Hospitality Corporation and Defendant Compass Group.

Tafadzwa Nhira was hired to work as Thompson Hospitality's Food Service Director (FSD) at Savannah State University in Georgia. In June of 2005, Plaintiff was transferred to the FSD position at Morgan State University in Maryland.  As an FSD at Morgan State, Plaintiff's job was to plan, direct, and manage all aspects of the food services operation in the university's main dining hall, food court, faculty dining room, and convenience store.  Plaintiff was primarily responsible for tracking and reporting the expenses, revenue, food costs, and inventory for each of these units.

Every Monday, Plaintiff provided financial reports to his District Manager, Dina Zaikouk.  In 2011, in order to compile those reports, Plaintiff was counting the inventory in the dining hall and Executive Chef Francis Hassaine was responsible for counting the same in the food court.  On Monday evenings, Zaikouk and the FSDs in her district would collectively review each university's financial status.  Zaikouk and others in management relied on these reports from FSDs to determine whether the university accounts were operating efficiently and in a profitable manner.  Further, Thompson Hospitality used the reports to administer a Quarterly Bonus Plan, which provided additional compensation to FSDs and other managers based on the profitability of their accounts.

In October of 2011, two Thompson Hospitality employees were caught reporting inflated inventory figures.  Timothy Kent, the FSD at Mississippi Valley University, was terminated October 18, 2011, for falsifying inventory numbers, ECF No. 102-23, and Patrick Brooks, FSD at Tougaloo College, was terminated on October 18, 2011, because one of the managers reporting to him falsified inventory numbers and Brooks failed to check that manager's reports, ECF No. 102-24.  In response to these cases of fraudulent reporting, Zaikouk decided to create a new procedure for taking and recording inventory in her district. On October 17, 2011, Zaikouk sent an email outlining that procedure to the FSDs in her district, other district managers, and Corporate Executive Chef, Todd Burge.  ECF No. 102-25. Under the new procedure, two associates were needed, one to count and the other to record inventory numbers.  Before inventory reports were submitted to finance, an FSD was to perform a recount to confirm the associates' numbers.

On October 31, 2011, Thompson Hospitality hired Alessandra McGuire to serve as the Retail Director of the Morgan State food court.  On November 28, 2011, McGuire emailed Zaikouk, stating that she was uncomfortable working with Plaintiff because the "inventory was incorrect and the numbers being reported were inflated compared to what we actually have on hand."  ECF No. 102-19.  On or about that same day, Zaikouk instructed Michael

3

Amos, Executive Chef for the dining hall, that he should be one of the two people counting inventory each week.  ECF No. 102-6 ¶ 9.  On December 1, 2011, Amos recorded the dining hall inventory and gave the report to Retail Manager Roy Wilkins, who transferred the numbers onto a computer spreadsheet.  That spreadsheet, reflecting $15,275.05 in inventory, was sent to Zaikouk and Plaintiff.

When Zaikouk received Wilkins' email, she was concerned because the inventory reported by Amos was significantly less than that reported by Plaintiff for the previous two weeks.[3]  ECF No. 102-20 ¶ 17.  Zaikouk asked Burge to travel to Morgan State on Monday December 5, 2011, in order to assess the inventory in the dining hall.  Burge's report also showed that the dining hall's inventory was significantly lower than the inventory submitted by Plaintiff for the previous two weeks.  When Plaintiff received the email from Wilkins, he decided to conduct his own count because he thought Amos missed some items.  Plaintiff prepared an inventory summary sheet which stated that the correct inventory level for the dining hall was over $27,000.  ECF No. 102-3 at 216.  Plaintiff, Burge, and Amos met, and Plaintiff was able to identify a few things that Amos and Burge missed, and those things were added to their summaries.

---

[3] Inventory on November 27, 2011, was $35,969.89, and inventory on November 20, 2011, was $46,011.78.

By Burge's account, the final inventory for the dining hall as of December 4, 2011, was $17,611.38.

On that same day, Monday December 5, 2011, Zaikouk and Burge spoke with Hassaine, and Hassaine acknowledged that he had been padding the inventory levels for the food court.  ECF No. 102-30.  The next day, December 6, 2011, Zaikouk, Burge, and the Vice President of Human Resources, Jill Brown, traveled to Morgan State to meet with Hassaine and Plaintiff.  That day, Hassaine was terminated for submitting false reports and Plaintiff was terminated for improperly inflating inventory figures and for failing to discover and report Hassaine's inflated inventory figures.

On March 7, 2014, Plaintiff, acting pro se, filed an eleven-count Complaint against Thompson Hospitality, Compass Group, Morgan State University, Bowie State University, and ten individuals who are current and former employees of Thompson Hospitality.  ECF No. 1.  Plaintiff added a twelfth count on April 17, 2014.  ECF No. 4.  Plaintiff's Complaint and amendment thereto assert a variety of causes of action against Defendants, as discussed below.  On November 11, 2014, the Court granted motions to dismiss filed by Morgan State University and Bowie State University.  ECF No. 66.  In addition, Plaintiff was unable to serve some of the individual Defendants; Todd Burge, Nancy Wediner, Michael Amos, and Alessandra McGuire; and those

Defendants were dismissed without prejudice on March 25, 2015. ECF No. 77.  All remaining parties joined in the Motion for Summary Judgment pending before the Court.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  This standard requires courts to "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence."  Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-248.  Further, "[f]actual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

Where a plaintiff is pro se, the court may be obligated to construe that plaintiff's papers liberally.  Carter v. Hutto, 781 F.2d 1028, 1031 (4th Cir. 1986).  The court may not, however, bend the substantive requirements necessary to defeat a motion for summary judgment.  Jorgensen v. Epic/Sony Records,

351 F.3d 46, 50 (2d Cir. 2003).  Specifically, the plaintiff cannot rely on conclusory allegations or speculation; instead, he must offer evidence to show that there is a genuine dispute of material fact.  Id.

## III. DISCUSSION

Although Plaintiff's allegations predominantly fall under Title VII, Plaintiff attempts to plead numerous other causes of action.  The Court will address those first, and then turn to Plaintiff's Title VII claims.

## A. Causes of Action other than those under Title VII

Plaintiff's fifth cause of action states "denial of due process in violation of constitutional rights and Title VII, in furtherance of their real motive of discrimination and retaliation."  ECF No. 1 at 28.  The Fifth and Fourteenth Amendments to the United States Constitution, both of which contain a due process clause, limit the power of the federal government and the state governments to discriminate. Plaintiff's due process claim is inadequate because private citizens and employers, like Defendants in this case, are not subject to suit for constitutional violations absent government involvement.  Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc., 531 U.S. 288, 295-296 (2001).  Plaintiff similarly lacks a legal basis for seeking due process protection under Title VII, which addresses unlawful employment practices,

and contains no due process protections.   See generally 42
U.S.C. § 2000e-2.

Plaintiff's eighth cause of action states:

> I, Tafadzwa Nhira, allege and repeat covenant of fair
> dealing.  After dedicated years of self-less service,
> there had developed a good faith relationship between
> Thompson, Compass group and all their strategic
> partners to treat me fairly and at least give me
> opportunity to explain myself in unclear situations as
> opposed to just saying an audit was conducted
> yesterday and it was confirmed therefore today you are
> terminated.

ECF No. 1 at 28.  Maryland law does not recognize breach of the
implied covenant of good faith and fair dealing as an
independent cause of action.  Mount Vernon Properties, LLC v.
Branch Banking & Tr. Co., 907 A.2d 373, 381 (Md. Ct. Spec. App.
2006).  A breach of that implied covenant simply supports
"another cause of action at law, e.g., breach of contract."  Id.
Thus, construing Plaintiff's eighth cause of action as a claim
for breach of contract, under Maryland law, that claim must
allege with certainty and definiteness "facts showing a
contractual obligation owed by the defendant to the plaintiff
and a breach of that obligation by the defendant."  Cont'l
Masonry Co., Inc. v. Verdel Constr. Co., Inc., 369 A.2d 566, 569
(Md. 1977).  Plaintiff has not alleged with certainty any
contractual obligation owed by the Defendants.  To the extent
Plaintiff refers to the Thompson Hospitality Policies and
Procedures Handbook, that handbook specifically states

8

"[n]either this handbook nor any other Company document, confers any contractual right, either expressed or implied, to remain an employee of the Company." ECF No. 102-4 ¶ 102.b. The handbook additionally informs employees that "[y]our employment is not for any specific time and may be terminated at will, with or without cause and with or without prior notice." Id. This language is notable, as Maryland does not recognize a cause of action for breach of the covenant of good faith and fair dealing where the employee in question is an at-will employee. Ward v. 84 Lumber, 758 F. Supp. 335, 336-337 (D. Md. 1991).

Plaintiff's ninth cause of action states:

> I Tafadzwa Nhira, allege parents and students of
> Morgan State gave Thompson and Compass Group and
> Morgan an opportunity to do well, therefore budgets
> should be reasonable specifically for Rawlings Dining
> hall where students are forced to eat in the dining
> hall.

ECF No. 1 at 28. There is no discernable cause of action in count nine. Setting budgets is a prerogative of any business, and federal courts do not have a responsibility to evaluate the budgetary decisions of employers such as Thompson Hospitality.

Plaintiff's tenth cause of action states:

> I, Tafadzwa Nhira, allege violation of public trust by
> both Bowie University and Thompson when Zaghari
> dissuaded JarAllah from disciplining the chef who spit
> in the prep sink. In addition Zaghari stick his
> fingers in meatballs defiantly of health regulation
> and he is not disciplined because he has strong
> relationship with Zaikouk and who is from Morocco like

9

her, and also Kelly Brown, and Jenoure do not do
anything about it.  Whereas anything pertaining to me
they all converge and descend on me within a day or
two.

ECF No. 1 at 29.  There is no discernable cause of action in

count ten.  Plaintiff appears to believe that Thompson

Hospitality violated the public trust because its employees were

not disciplined for violating health regulations.  Plaintiff

does not claim that he was injured by this conduct or that he

was treated differently for similar conduct.  He merely believes

that the person who violated the public trust should receive

some form of discipline.  ECF No. 102-3 at 380.  The proper

forum for raising a claim of this type, if any, would be the

Maryland State administrative agency that handles health issues.

Finally, throughout his Complaint and his Response in

Opposition to Defendants' motion, Plaintiff repeatedly refers to

the Sarbanes-Oxley Act of 2002 (SOX), 15 U.S.C. § 7201 et seq.

This legislation was designed to protect shareholders of

publicly-traded companies from fraudulent reporting of financial

information, and the statute provides protection against

retaliation for whistleblowing employees of publicly-traded

companies who report potentially unlawful conduct.  Plaintiff

appears to believe that because Morgan State University received

government funding, Thompson Hospitality had a legal obligation

to honestly report all financial numbers.  For this reason,

10

Plaintiff represents that he took financial matters very seriously, and brought various concerns to the attention of Thompson Hospitality's corporate personnel.  For example, Plaintiff complained about the way Thompson Hospitality expensed vacations, expensed bonuses, provided rebates, and timed wage increases.  ECF No. 102-3 at 259, 260, 265, 271, 272.  Plaintiff did not, however, report any of his concerns to a federal or state agency.  ECF No. 102-3 at 269.

Before a plaintiff can assert a cause of action in federal court under SOX's whistleblower protection provisions, he must file a complaint with the Occupational Safety and Health Administration (OSHA) of the Department of Labor "[w]ithin 180 days after an alleged violation of the Act occurs or after the date on which the employee became aware of the alleged violation of the Act."  18 U.S.C. § 1514A(b)(2)(D); 29 C.F.R. § 1980.103. If a final administrative decision is not issued within 180 days of the filing of the complaint and "there is no showing that such delay is due to the bad faith of the claimant," an employee may bring an action at law or in equity for de novo review in federal court.  18 U.S.C. § 1514A(b)(1)(B).  Plaintiff never filed an administrative claim with OSHA, therefore, the Court lacks jurisdiction over his SOX claim.

In conclusion, the Court finds that Defendants are entitled to summary judgment on Counts 5, 8, 9, 10, and any claim brought under SOX.

## B. Title VII

Plaintiff's remaining causes of action fall under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Plaintiff's Title VII claims include retaliation, discrimination, failure to promote, and unequal compensation. In a Title VII case, at the summary judgment stage, the court's inquiry is limited to whether the plaintiff can proceed by presenting either direct evidence of a Title VII violation, or indirect evidence under the burden shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  As detailed below, Plaintiff has not met the burden required to survive summary judgment.[4]

### 1. Retaliation

Plaintiff claims he was discharged in retaliation for encouraging Bowie State University's Executive Chef, Tajun

---

[4] It is well established that "[e]mployees are not liable in their individual capacities for Title VII violations." Lissau v. S. Food Serv., Inc., 159 F.3d 177, 178 (4th Cir. 1998).  For that reason, and the reasons mentioned below, Thompson Hospitality's Chief Operating Officer, Maurice Jenoure; former Vice-President of Human Resources, Jill Brown; Vice-President of Operations, Dina Zaikouk; Bookkeeper, Dana Mitchell; Bowie State University Food Service Director, Magid Zaghari; and Dan Kelly [position unknown] are entitled to summary judgment on Plaintiff's Title VII claims.

JarAllah, to raise discrimination and misconduct claims through
Defendants' internal complaint process.  Plaintiff alleges that
in the summer of 2011, JarAllah came to Morgan State to pick up
food, and while he was there, he shared with Plaintiff concerns
regarding Bowie State's FSD, Magid Zaghari.  After their initial
meeting at Morgan State, Plaintiff and JarAllah spoke on the
phone and met a number of times regarding JarAllah's concerns,
including the concern that Zaghari "was manipulating his
inventory numbers and reporting false inventory."  ECF No. 1 at
14.  During those conversations, Plaintiff encouraged JarAllah
to use the internal complaint procedure in Thompson
Hospitality's Employee Handbook in order to bring his concerns
to the attention of management.  Plaintiff states that
JarAllah's interaction with management "did not turn out the way
[he] thought it would," and that he "was the one who was fired
in retaliation."  Id.

Title VII makes it illegal "for an employer to discriminate
against any of his employees ... because he has opposed any
practice made an unlawful employment practice ...."  42 U.S.C. §
2000e-3.  Plaintiff does not have direct evidence to support his
retaliation claim, and is therefore restricted to proving his
case under the burden shifting framework of McDonnell Douglas.
McDonnell Douglas requires a plaintiff to first establish a
prima facie case of retaliation by a preponderance of the

evidence.  _Laughlin v. Metro. Washington Airports Auth._, 149 F.3d 253, 258 (4th Cir. 1998).  In order to establish a prima facie claim of retaliation under Title VII, a plaintiff is required to demonstrate that (1) he engaged in a protected activity; (2) the employer acted adversely against him; and (3) the protected activity was causally connected to the employer's adverse action.  _Okoli v. City of Baltimore_, 648 F.3d 216, 223 (4th Cir. 2011).

Once the plaintiff establishes his prima facie case, there is a presumption of retaliation and the burden shifts to the defendant to articulate a non-retaliatory reason for its conduct.  _Laughlin_, 149 F.3d at 258.  The defendant's burden at this stage is not to persuade the trier of fact that its proffered reason was the actual motivation for the challenged decision.  _Mereish v. Walker_, 359 F.3d 330, 335 (4th Cir. 2004).  Rather, the defendant "must merely articulate a justification that is 'legally sufficient to justify a judgment' in his favor."  _Id._ (quoting _Texas Dep't of Cmty. Affairs v. Burdine_, 450 U.S. 248, 254 (1981)).  If the defendant meets the burden of production, the presumption of retaliation is displaced and the plaintiff must persuade the fact finder that the defendant's proffered reason is merely a pretext for discrimination.  _Equal Emp't Opportunity Comm'n v. Navy Fed. Credit Union_, 424 F.3d 397, 407 (4th Cir. 2005).

Defendants assert that they are entitled to summary judgment because Plaintiff has failed to establish a causal link between the protected activity and the adverse employment action.  Defendants argue that Plaintiff has not shown that the assistance he provided to JarAllah was known to them and that, absent knowledge of Plaintiff's protected conduct, Defendants' decision to terminate Plaintiff could not have been motivated by Plaintiff's protected conduct.  The Fourth Circuit has found that "[s]ince, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."  Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998).

The only evidence on the record indicating that Defendants had knowledge that JarAllah received assistance from anyone at Thompson Hospitality is a November 19, 2011, email from JarAllah to Jenoure which states "I taking this step to contact you as one of the company Managers informed me that you are a 'fair person.'"  ECF No. 102-16.  This letter is inadequate to show Defendants had knowledge that Plaintiff engaged in protected activity, as there is nothing in the letter to draw Defendants' attention to Plaintiff.  Plaintiff was not identified as the company manager who said Jenoure was a fair person, and the

15

protected activity Plaintiff engaged in was not mentioned in the letter.  Further, Jenoure affirmed "I did not know who [JarAllah] was referring to when he referenced a 'company Manager,'" and that, if Plaintiff "took any steps to encourage [] JarAllah to contact me, I had no knowledge of this at any time in 2011."  ECF No. 102-12 ¶ 11.

Plaintiff submitted other emails and documents supporting the fact that JarAllah used the internal complaint process and eventually turned to the Equal Employment Opportunity Commission.  These records, however, do not make any mention of Plaintiff's involvement in the process.  Of note, during Plaintiff's deposition, he was asked whether he informed Defendants that he was assisting JarAllah:

> Q.   "But while you were working for Thompson Hospitality, you didn't go to Dina Zaikouk or Maurice Jenoure or someone else at Thompson Hospitality and talk about Mr. JarAllah, did you?"
>
> A.   Mr. Taj - - no, not to - -
>
> Q.   Not while you were there?
>
> A.   Yeah. Not then, no.

ECF No. 102-3 at 292-293.  In conclusion, Plaintiff's only evidence of retaliation consists of non-sworn factual statements based on hearsay, speculation, and his own subjective opinion, rather than admissible evidence which would create a material factual dispute as necessary to avoid summary judgment.  Because

Plaintiff has failed to establish a causal connection between his protected activity and Defendants' adverse action, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.[5]

## 2. Discrimination

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Plaintiff, a "black male of Zimbabwean national origin and of Christian faith," alleges that Defendants engaged in all five of the above-mentioned types of discrimination when they terminated him.[6]  ECF No. 1 at 5.  In Counts two, six, and seven,

---

[5] Plaintiff asserts that his protected conduct included the various concerns he raised about Morgan State's underpayments to Thompson Hospitality, and concerns he raised regarding Defendants' lack of compliance with financial reporting obligations.  "To the extent Plaintiff is claiming that []he was retaliated against for being a whistle blower regarding fraud and mismanagement, such claim is not cognizable under Title VII which only protects against retaliation for claims of discrimination."  Simmons v. Shalala, 946 F. Supp. 415, 420 (D. Md. 1996), aff'd, 112 F.3d 510 (4th Cir. 1997).

[6] Plaintiff makes vague and unspecified allegations that people in different groups were treated more favorably than those in the groups to which he belongs.  As to national origin, Plaintiff believes Moroccans were treated more favorably than those from Zimbabwe.  As to color, Plaintiff believes that

Plaintiff explains that, unlike similarly situated Thompson
Hospitality employees outside of his protected classes,
Plaintiff was not allowed to correct, revise, and adjust his
inventory report, resulting in his termination.  Plaintiff
further claims that other Thompson Hospitality employees outside
of his protected classes manipulated inventory numbers without
similar punishment.

Plaintiff has not submitted direct evidence of any type of
discrimination, thus, to establish a prima facie case of
discriminatory discharge, Plaintiff must show: (1) that he is a
member of a protected class; (2) that he suffered from an
adverse employment action; (3) that at the time the employer
took the adverse employment action he was performing at a level
that met his employer's legitimate expectations; and (4) other
employees who are not members of the protected class were
retained under apparently similar circumstances.  See,
e.g., Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 133 (4th
Cir. 2002); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir.
1995).  As mentioned above, where a plaintiff makes such a
showing, the burden shifts to the defendants to articulate a

---

employees who were lighter in complexion were treated more
favorably than employees with dark complexions.  As to race,
Plaintiff appears to believe African-Americans and Caucasians
were treated more favorably than Africans.  As to religion,
Plaintiff claims Islam was favored over Christianity.  As to
sex, Plaintiff claims women were involved in his termination,
and that women were treated differently.

legitimate, nondiscriminatory reason for the employment action. McDonnell Douglas, 411 U.S. at 802. If the employer produces a legitimate reason for the action, the burden once again shifts to the plaintiff to show that the employer's rationale is a pretext for discrimination. Id. at 804.

Defendants contend that Plaintiff cannot establish the third or fourth elements of his prima facie case. In regards to whether Plaintiff was meeting Defendants' legitimate employment expectations, the evidence before the Court demonstrates that Plaintiff failed to adequately and honestly perform his duties. For example, Plaintiff failed to check Hassaine's inventory sheets, which was an essential part of Plaintiff's position as FSD. ECF No. 102-3 at 115-118. Those inventory sheets, which Hassaine admitted to regularly falsifying, were submitted to Plaintiff for review and went, unchanged, to corporate. ECF No. 102-9 ¶ 5. The evidence also shows that Plaintiff acted improperly on December 4, 2011, when he tried to submit inventory numbers for the dining hall that were at least $10,000 more than the actual inventory in that unit. ECF No. 102-20 ¶ 16. This evidence demonstrates Plaintiff's failure to meet legitimate employment expectations as described in the Honesty and Integrity provisions of the Thompson Hospitality Policies and Procedures Handbook. See ECF No. 102-4 ¶ 1000f (stating that anyone who fails to implement company guidelines and

procedures or who records false information will be subject to disciplinary action up to and including termination).

In regards to prong four of Plaintiff's prima facie case, Plaintiff identified a number of FSDs who he believes had experienced similar inventory problems.  Plaintiff's testimony suggests that he had personal conversations with Thompson Hospitality employees who told him about problems they were experiencing with inventory.  By way of example, Plaintiff claims that Nicole Rutledge, who worked at Elizabeth City, called him and said that her boss, Sharon Williams, was asking her to change inventory numbers.  ECF No. 102-3 at 315. Plaintiff claims that women were treated more favorably because Rutledge and Williams "should have been fired.  But that didn't happen."  Id. at 316.  Plaintiff has not presented any evidence to support this assertion, nor has he alleged that Defendants were aware of this incident.  Jenoure declared that he never received any information that Rutledge had falsified inventory numbers or that Williams had asked her to do so.  ECF No. 102-12 ¶ 8.

Plaintiff additionally claims that he was treated unfairly in comparison to other Thompson Hospitality employees, namely Driss Jariff, Craig Johnson, Roy Wilkins, Magid Zaghari, Roger Avery, Nicole Rutledge, and Teresa Harris.  Plaintiff avers that these employees were questioned by management in conference

calls and through email regarding the accuracy of their
inventory numbers.  Yet, as aptly stated by Defendants, there is
a substantive difference from the management perspective
"between someone whose inventory is believed to be wrong as a
result of human error or lack of care versus someone whose
inventory is believed to be wrong because it has been
falsified."  ECF No. 102-1 at 45-46.  Plaintiff does not have
any evidence that errors in inventory submissions by his
identified comparators were intentional in nature.  Furthermore,
Defendants submit that all employees who engaged in conduct
similar to Plaintiff's conduct were terminated.  Defendants'
evidence suggests that aside from Plaintiff and Hassaine, the
only other Thompson Hospitality employees caught submitting
fraudulent inventory numbers were Sabrina Williams,[7] Timothy
Kent, and Patrick Brooks.  All three of these employees were
terminated for such misconduct.  ECF Nos. 102-22, 102-23, 102-
24.

    As such, the Court finds that Plaintiff has failed to
establish a prima facie case of discriminatory discharge:
Plaintiff failed to produce any evidence to create a genuine
issue of fact that he satisfactorily met his employer's
legitimate expectations at the time of his termination, or that

---

[7] Williams was an FSD at Elizabeth State University.  She was
terminated April 11, 2011, for submitting fraudulent inventory
figures.  ECF No. 102-22.

other employees, who are not members of the protected class, were retained under apparently similar circumstances.

Assuming, arguendo, that Plaintiff could establish a prima facie case for discrimination, Defendants have identified and produced evidence that they had a legitimate, non-discriminatory reason for terminating Plaintiff - Plaintiff submitted false inventory reports.  On the disciplinary form Plaintiff received on the day of his termination, Thompson Hospitality wrote;

> [i]t has been brought to our attention that you have been inaccurately accounting for and padding your inventory.  An audit was conducted yesterday, which confirmed these allegations.  Your actions constitute fraud.  Therefore effective today, your employment with the company is terminated.

ECF No. 102-31.  Plaintiff has proffered no evidence to contradict the Defendants' legitimate, non-discriminatory reason for terminating him.

Plaintiff's only evidence of pretext is his insistence that the reason Defendants gave for his termination was incorrect, yet, it is not enough for Plaintiff to allege pretext based on his own view of the truth.  In order to rebut Defendants' non-discriminatory reason, Plaintiff's task is to proffer evidence showing that Defendants' stated reason was not the real reason for their actions.  See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000) (stating it is "the perception of the decision maker which is relevant, not the self-assessment of the

plaintiff"). If the Court assumes for the purposes of summary judgment that Amos and Burge counted the dining hall inventory incorrectly, and that Plaintiff's count was in fact correct, Plaintiff has nonetheless offered nothing but speculation to support his contention that Defendants' error was a pretext for some form of unlawful discrimination. Because there is no evidence that Defendants' reason was not the real reason, Defendants are entitled to summary judgment on Plaintiff's discrimination claims.

## 3. Failure to Promote

It is illegal for an employer to make decisions about promotions based on an employee's national origin or religion. Plaintiff alleges that Defendants gave preferential treatment to Moroccans, and claims that this preference was evidenced by Magid Zaghari's promotion to the position of District Manager, a position Plaintiff claims Thompson Hospitality employees, including District Manager Zaikouk, knew Plaintiff was interested in obtaining. He further avers that Zaikouk failed to promote him due to his religion, Christianity, as evidenced by her statement in a private conversation: "[i]n this position, they ask you to lie and do things you don't want to believe, that will make you lose your religion." ECF No. 102-3 at 332. At his deposition, Plaintiff claimed that Zaikouk's comment led him to believe that in order to be promoted to District Manager,

he "had to be some other religion.  Maybe I had to be Muslim."[8]
Id. at 333.

To establish a prima facie case of failure to promote in
violation of Title VII, the plaintiff must show that he or she
(1) is a member of a protected group; (2) applied for the
position in question; (3) was qualified for the position; and
(4) was rejected for the position under circumstances giving
rise to an inference of unlawful discrimination.  McNairn v.
Sullivan, 929 F.2d 974, 977 (4th Cir. 1991).  Plaintiff cannot
satisfy the second prong of his prima facie case because he
never applied for the District Manager position, as evidenced by
his deposition testimony.  When asked about his third cause of
action, Plaintiff stated that the District Manager position
would not be accurately referred to as "the position I didn't
receive.  I was interested.  So it would be a wrong
characterization to say 'the position I didn't receive.'"  ECF
No. 102-3 at 324.  Plaintiff also agreed that the position was
never advertised as available during his employment with
Thompson Hospitality.  Id. at 330.

Furthermore, Plaintiff does not refute that Zaikouk held
the position of District Manager for the duration of Plaintiff's

---

[8] It would appear that Plaintiff is suggesting that Zaikouk's
comment is somehow "direct evidence" of discriminatory failure
to promote.  The Court recognizes that her comment was just a
figure of speech.

employment.  Id.  In her declaration, Zaikouk affirmed that she
served as District Manager until February 19, 2013, and that
Zaghari was never promoted to that position.  ECF No. 102-20 ¶¶
3, 4.  Plaintiff failed to establish prong two of his prima
facie case, therefore, Defendants will be granted summary
judgment on Plaintiff's failure to promote claim.

**4. Unequal Compensation**

It is illegal for an employer to discriminate against an
employee in the payment of wages on the basis of race.  In Count
twelve,[9] Plaintiff alleges that Defendants engaged in
compensation discrimination because Roger Avery, an African-
American, was given preferential treatment in regards to his
salary.  Plaintiff and Avery started working for Morgan State in
2005, Plaintiff as a FSD and Avery as a Catering Director.  ECF
No. 102-3 at 351; ECF No. 102-8.  Plaintiff's starting salary
was $65,000, ECF No. 4, and Avery's starting salary was
58,999.98, ECF No. 102-20 ¶ 20.  When Plaintiff was terminated
in December of 2011, Thompson Hospitality selected Avery to fill
the FSD position at Morgan State on a temporary basis.  Id. ¶
19.  Avery was eventually promoted to permanent FSD in 2012, and
his salary rose to $75,000.12, which is slightly less than

---

[9] While Plaintiff's Complaint is limited to eleven causes of
action, he filed a supplemental pleading, ECF No. 4, which could
be construed as an effort to amend his Complaint to include a
cause of action for compensation discrimination under Title VII.

Plaintiff's final salary of $75,691.20, but more than the
$65,000 Plaintiff made when he began working as a FSD.  Id. ¶
20.  Plaintiff alleges that because Avery did not have the same
quality of education and formal experience as he did, his higher
wage as a first-year FSD is evidence of discrimination.  ECF No.
102-3 at 347.  Plaintiff states "[i]t took me 7.5 years to get
to a little over $75,000.00.  Whereas Roger Avery took him zero
years to get to $75,000.00.  What do you call that?  Equal
opportunity employment?  Equal treatment?"  ECF No. 103 at 40.

To establish a prima facie case of discriminatory
compensation under Title VII, the plaintiff must show: (1) that
he is a member of a protected class; (2) that he was paid less
than an employee outside the class; and (3) that the higher paid
employee was performing a substantially similar job.  Kess v.
Mun. Employees Credit Union of Baltimore, Inc., 319 F. Supp. 2d
637, 644 (D. Md. 2004).  The Court will assume without deciding
that Plaintiff has established his prima facie case of
discriminatory compensation, and will turn to the McDonnell
Douglas framework.

The Court finds that Defendants responded with a
legitimate, non-discriminatory reason for the difference in
Plaintiff's salary and Avery's salary at the time each assumed
the role of FSD.  In her Declaration, Zaikouk explained the
circumstances surrounding the decision to hire Avery as FSD:

19. Mr. Avery was already on site at the account, and he was familiar with the Company's operational procedures as well as being familiar with the Morgan State managers with whom a Food Service Director needs to interact.  Mr. Avery had years of food service experience at that point, and he knew what was required of the position ...

20.  Thereafter, Mr. Avery performed well during the several months that he filled the position of Acting Food Service Director.  I continued to get positive feedback from the client regarding his job performance, so Maurice Jenoure and I made him the permanent FSD for the account, and Mr. Avery has continued in that capacity to the present day.

ECF No. 102-20.  In the Motion for Summary Judgment, Defendants reiterate the points raised by Zaikouk and proffer that Avery was given a salary comparable to Plaintiff's salary because he "had years of food service at that point."[10]  ECF No. 102-1 at 28.  The Court finds that Defendants have put forth a non-discriminatory reason for the alleged salary disparity, based on Avery's experience, reputation, and familiarity with the account at Morgan State.  Plaintiff failed to put forth any evidence that Defendants' non-discriminatory explanation is unworthy of credence, and his own opinions about his qualifications and Defendants' subjective motivations are not sufficient to establish pretext.  See McCain v. Waste Management, Inc.,

---

[10] Defendants further aver that Avery's salary, upon promotion and until the present day, is not more than Plaintiff's final salary, and therefore, that Plaintiff cannot show compensation discrimination.

115 F. Supp. 2d 568, 575-576 (D. Md. 2000) (finding that the plaintiff did not present admissible evidence sufficient to create a genuine dispute when he rested upon allegations and his own prior statements to speculate on the defendant's motivations). Therefore, Defendants will be granted summary judgment on Plaintiff's compensation discrimination claim.

## IV. CONCLUSION

For the above-stated reasons, the Court will grant the Defendants' Motion for Summary Judgment. A separate order will issue.

_____/s/_____ _____
William M. Nickerson
Senior United States District Judge

DATED: September 8, 2016